UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE GOVERNMENT OF QUÉBEC, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>THE UNITED STATES, )<br>)<br>*Defendant*. )<br>)<br>) | Court No. 20-00168 |

# COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, the Government of Québec, ("Québec" or "Plaintiff"), by and through its undersigned attorneys, alleges and states as follows:

## ADMINISTRATIVE DECISION TO BE REVIEWED

1. This is an appeal from the final determination of the countervailing duty investigation of *Utility Scale Wind Towers From Canada* ("Wind Towers from Canada"). The period of investigation ("POI") is January 1, 2018 through December 31, 2018.

2. On July 6, 2020, the U.S. Department of Commerce, International Trade Administration, Enforcement and Compliance ("Commerce") published its final determination finding that Wind Towers from Canada are being subsidized. *Utility Scale Wind Towers From Canada: Final Affirmative Countervailing Duty Determination and Final Negative Determination of Critical Circumstances*, 85 Fed. Reg. 40245 (Dep't Commerce July 6, 2020), ("*Final CVD Determination*"). Commerce's factual and legal conclusions underlying its final countervailing duty ("CVD") determination are set forth in the Issues and Decision

Memorandum (June 29, 2020). Memorandum from J. Maeder to J. Kessler, re: Issues and Decision Memorandum for the Final Determination of the Countervailing Duty Investigation of Utility Scale Wind Towers from Canada (June 29, 2020) ("I&D Memo"), available at https://enforcement.trade.gov/frn/summary/canada/2020-14439-1.pdf).

3. On August 26, 2020, Commerce issued an amended final determination as to Canada and CVD Order. *Utility Scale Wind Towers From Canada, Indonesia, and the Socialist Republic of Vietnam: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Orders*, 85 Fed. Reg. 52543 (Dep't of Commerce Aug. 26, 2020) ("*Amended CVD Determination & Order*").

## JURISDICTION

4. Plaintiff brings this action pursuant to Sections 516A(a)(2)(A)(i)(II) and 516A(a)(2)(B)(i) of the Tariff Act of 1930, *as amended* (the Act), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and 1516a(a)(2)(B)(i). Plaintiff contests Commerce's *Final CVD Determination*, specifically as applied to Plaintiff. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING

5. Plaintiff is an interested party to the proceeding under Sections 516A(f)(3) and 771(9)(A) of the Act, codified at 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(B), and 28 U.S.C. 2631(k)(1) respectively. Plaintiff is the government of a province in the country of Canada in which the subject merchandise are produced or manufactured and from which they are exported. The Government of Québec actively participated in the underlying CVD investigation by submitting questionnaire responses and administrative briefs.

6. Plaintiff, therefore, has standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

7.  The contested *Final CVD Determination* was published in the Federal Register on July 6, 2020, and involves a "free trade area country" within the meaning of 19 U.S.C. §§ 1516a(f)(10) and 1516a(g). The Government of Québec timely filed its Notice of Intent to Seek Judicial Review with the USMCA Secretariat, U.S. Section, on July 24, 2020, jointly with the Government of Canada, as required by 19 U.S.C. § 1561a(g)(3)(B). The Government of Québec is filing a Summons and Complaint on September 4, 2020, which is within 30 days after the 31st date following such publication (the 31st date was Thursday, August 6, 2020). 19 U.S.C. §§ 1516a(a)(5)(A), 1516a(g), and 1516a(a)(2)(B).

## STANDARD OF REVIEW

8.  This Court must remand any administrative determination by Commerce which is "unsupported by substantial evidence on the record" as a whole, or is "otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

9.  When reviewing whether Commerce's actions are unsupported by substantial evidence, the Court assesses whether the agency action is "unreasonable" given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

10. When reviewing Commerce's statutory interpretations, the Court applies the two-part framework set forth in the Supreme Court's opinion in *Chevron*. *Union Steel v. United States*, 713 F.3d 1101, 1106–07 (Fed. Cir. 2013) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). Under *Chevron*, to determine whether an agency's interpretation of the statute is entitled to deference, the Court conducts a two-part test. Under the

first prong of this test, where Congress has spoken directly to the question at issue, the Court and the agency must give effect to the unambiguously expressed intent of Congress. *See* 467 U.S. at 842–43. If, however, the statute is vague or silent on an issue, the Court upholds the agency's interpretation provided that the interpretation is reasonable. *See id*. at 843.

11. This Court has found Commerce's determinations unlawful "where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. v. United States*, 20 CIT 573, 575, 927 F. Supp. 451, 454 (1996); *see also Asociacion Colombiana de Exportadores de Flores v. United States*, 22 CIT 173, 185, 6 F. Supp. 2d 865, 880 (1998).

## STATEMENT OF FACTS

**A. Procedural History and Background**

12. On July 9, 2019, the Wind Tower Trade Coalition ("Petitioner") filed a countervailing duty petition with Commerce alleging that utility scale wind towers from Canada were subsidized, and that imports of these products were causing material injury to the U.S. wind tower industry.

13. On August 6, 2019, Commerce published a notice of initiation of a CVD investigation of Wind Towers from Canada. *See Utility Scale Wind Towers From Canada, Indonesia, and the Socialist Republic of Vietnam, Initiation of Countervailing Duty Investigations*, 84 Fed. Reg. 38216 (Dep't Commerce Aug. 6, 2019). Commerce initiated the investigation pursuant to Section 702 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1671a. Commerce selected Marmen Inc. and Marmen Énergie Inc. (collectively, "Marmen") as mandatory respondents for Canada.

14. On August 28, 2019, the United States International Trade Commission ("ITC") preliminarily determined that there is a reasonable indication that imports of utility scale wind

towers are materially injuring the U.S. industry. *See Utility Scale Wind Towers From Canada, Indonesia, Korea and Vietnam*, 84 Fed. Reg. 45171 (Int'l Trade Comm'n Aug. 28, 2019).

15. On December 13, 2019, Commerce preliminarily determined that wind towers from Canada were subsidized and assigned Marmen a preliminary subsidy rate of 1.09% . *Utility Scale Wind Towers From Canada: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With Final Antidumping Duty Determination*, 84 Fed. Reg. 68126 (Commerce Dep't Dec. 13, 2019) ("*Preliminary CVD Determination*"), and accompanying Decision Memorandum (Dec. 6, 2019), available at https://enforcement.trade.gov/frn/summary/canada/2020-02962-1.pdf ("Preliminary Decision Memo").

16. Québec participated throughout the proceeding through the timely filings of questionnaire responses, submission of legal arguments in the form of case and rebuttal briefs, and participating in an ex parte meeting with the Department of Commerce, in lieu of a hearing. On October 9, 2019, Québec submitted its response to Section II of the Initial CVD Questionnaire, *see* The Government of Québec's Response to the Department's August 28, 2019 Initial Questionnaire (Oct. 9, 2019) ("Québec's IQR").  On November 6, 2019 and November 22, 2019, Québec submitted its response to supplemental questionnaires. *See* The Government of Québec's Response to the Department's First Supplemental Questionnaire (Nov. 6, 2019) ("Québec's 1st Supp. QR") and The Government of Québec's Response to the Department's Second Supplemental Questionnaire (Nov. 22, 2019) ("Québec's 2nd Supp. QR"). In addition, on January 22, 2020, Québec filed a response to the Department's New Subsidy Allegation Questionnaire. *See* The Government of Québec's Response to the Department's New Subsidy Allegation Questionnaire (January 22, 2020) ("NSA QR"). On May 6, 2020, Québec filed a case

brief and on May 13, 2020, a rebuttal case brief. *See* The Government of Québec's Case Brief (May 6, 2020) and The Government of Québec's Rebuttal Brief (May 13, 2020).

17. On July 6, 2020, Commerce published its final determination finding that Wind Towers from Canada are being subsidized with a subsidy rate of 1.18 percent. *Final CVD Determination*, 85 Fed. Reg. at 40246.

18. On August 25, 202, the ITC published its final determination finding that the U.S. wind towers industry was being materially injured by reason of imports from Canada, Indonesia, Korea & Vietnam. *See Utility Scale Wind Towers From Canada, Indonesia, Korea, and Vietnam*, 85 Fed. Reg. 52357 (Int'l Trade Comm'n Aug. 25, 2020).

19. On August 26, 2020, Commerce published an amended final determination pertaining to Canada, lowering the CVD rate to 1.13 percent, and the CVD Order on Wind Towers from Canada. *Amended CVD Determination & Order*, 85 Fed. Reg. at 52545.

**B. Québec's Tax Credit for On-The-Job Training**

20. Québec reported the Tax Credit For On-The-Job Training in response to Commerce's initial CVD questionnaire. *See* Québec's IQR at Exhibit QC-C09-A.

21. Québec's Tax Credit For On-The-Job training is to encourage businesses to employ trainees and improve the professional skills of young workers. A corporation that employs a student or an apprentice as part of a qualified training program can claim a tax credit at a rate of 24% with respect to salary or wages paid. If the student or apprentice is also a person with disability or an immigrant, the corporation may be eligible for an increased credit. Individuals in business may also claim the tax credit, but the credit rates are reduced by 50%. The credit is widely available.

22.     The evidence on the record demonstrates broad usage of the Tax Credit For On-The-Job Training, and that the credit is not specific to a particular enterprise or industry.

23.     In its *Final CVD Determination*, despite record evidence demonstrating the credit is widely available and used by a variety of industries, Commerce determined that the Tax Credit For On-The-Job training was *de facto* specific because the number of companies that claimed the credit, as compared to all tax filers in Québec, was limited.

## C.  Québec's Tax Credit to Promote Employment in Gaspésie and Certain Maritime Regions of Québec

24.     The Tax Credit Promoting Employment in Gaspésie and Certain Maritime Regions of Québec ("Gaspésie Tax Credit") is available for taxpayers in the Province of Québec to promote job creation in selected regions, including Bas-Saint-Laurent, Côte Nord, and Gaspésie–Îles-de-la-Madeleine.  The credit allows eligible employers to use qualified salary and wages to derive a credit that can be used in two ways: (1) claimed as credit toward the provincial income tax payable in the current year, or (2) may be carried forward to a future tax year or applied retroactively to previous tax years.

25.     Marmen Énergie Inc. claimed the Gaspésie Tax Credit on its year-2017 Québec tax returns and applied the full amount as a credit toward income taxes payable in the same year. While the Gaspésie Tax Credit is used toward income tax payable, it is also considered taxable income, and the eligible employer must pay federal and provincial tax on the amount of the Gaspésie Tax Credit in the following tax year.  On its year-2017 tax returns, Marmen Énergie Inc. was therefore also required to pay federal and provincial taxes on the Gaspésie Tax Credit claimed on its year-2016 Québec tax returns.

26.     In calculating the "benefit" Marmen Énergie Inc. received from the Gaspésie Tax Credit program in the *Final CVD Determination*, Commerce included only the amount of the tax

credit, disregarding the additional taxes Marmen Énergie Inc. paid as a result of the tax credit program.

**D.  Québec's Additional Depreciation for Class 1a Assets/Additional Depreciation for Buildings (Class 1)**

27.  Québec reported its Additional Depreciation for Class 1a Assets/Additional Depreciation for Buildings (Class 1) in response to Commerce's initial CVD questionnaire.  *See* Québec's IQR at Exhibit QC-CCAB-A.  *See also* Government of Canada's Initial Questionnaire Response (Oct. 9, 2019) at Exhibit GOC-CRA-CLASS1-1.

28.  In Québec, "Class 1" assets include buildings and other property. The depreciation rate for Class 1 assets is 4% on a declining-balance basis. "Class 1a" assets are depreciated at a rate of 10% when at least 90% of a building is used for manufacturing or processing goods for sale or lease.  Although the building must be used for manufacturing or processing, to be classified as a Class 1a building, it need not be part of a specific industry.

29.  Under Québec's tax systems, entities usually determine the depreciation, also known as capital cost allowance ("CCA") rates based on the useful life of assets.  Eligibility for the program is based on the classification of the property.

30.  The capital cost allowance rates under the tax system are based on the average useful life of the asset.  The depreciation rate for Class 1a buildings reflects the actual shorter useful life of the property.  In other words, the empirically determined depreciation rate aligns with the useful life of the property; there is therefore no financial contribution to companies using the program.

31.  In the *Final CVD Determination*, Commerce found that the Additional Depreciation for Class 1a Assets is *de jure* specific pursuant to 19 U.S.C. § 771(5A)(D)(i) "because eligibility for this tax program is expressly limited as a matter of law to certain

industries." I&D Memo at 23.  Despite the evidence that the Class 1a depreciation rate aligned the CCA with the useful life of the underlying asset, a manufacturing plant, Commerce also determined that the Additional Depreciation for Class 1a Assets "provides a benefit as a tax reduction in the amount of the difference between the tax the company paid and the tax the company would have paid absent the tax reduction, as provided in 19 CFR 351.509(a)(1)."  I&D Memo at 24.

## STATEMENT OF CLAIMS

## COUNT I

32. The facts and allegations contained in paragraphs 1 through 31 are restated and incorporated herein by reference.

33. Commerce's determination that the on-the-job tax credit is *de facto* specific is not based on substantial evidence or in accordance with law.  The law and legislative history require that Commerce analyze, in order, whether (I) "{t}he actual recipients of a subsidy, whether considered on an enterprise or industry basis, are limited in number;" (II) "an enterprise or industry is a predominant user of the subsidy;" (III) "an enterprise or industry receives a disproportionately large amount of the subsidy;" or (IV) the "manner in which the authority exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others."  19 U.S.C. § 1677(5A)(D)(iii); 19 C.F.R. § 351.502.  Commerce's methodology – determining that a program is *de facto* specific because it is limited in number, based on how many tax payers have utilized the program compared to total tax filers in Québec – does not meet the statutory criteria or legal precedent analyzing these criteria.

## COUNT II

34. The facts and allegations contained in paragraphs 1 through 33 are restated and incorporated herein by reference.

35. Commerce's determination to use the amount of the Gaspésie Tax Credit claimed in tax-year 2017 as the "benefit" is not in accordance with law. The governing regulation, 19 C.F.R. § 351.509(a)(1), provides that a benefit "exists to the extent that the tax paid by a firm as a result of the program is less than the tax the firm would have paid in the absence of the program." Consequently, to calculate the tax savings "as a result of" the Gaspésie Tax Credit program, it is necessary to take into account not only the value of the tax credit – but also the additional taxes paid during the POI as a result of the tax credit program. Contrary to the plain language of the regulation, Commerce did not account for the additional taxes paid by Marmen Énergie Inc. as a result of using the Gaspésie Tax Credit program.

## COUNT III

36. The facts contained in paragraphs 1 through 35 are restated and incorporated herein by reference.

37. Commerce's determination that the Additional Depreciation for Class 1a Assets is countervailable is not supported by substantial evidence. Contrary to Commerce's determination that a "financial contribution" under 19 U.S.C. § 1677(5)(D)(ii) exists as revenue foregone, the Class 1a Assets/Additional Depreciation for Buildings does not accelerate depreciation or result in an increased tax deduction for manufacturing plants. The Class 1a Assets/Additional Depreciation for Buildings does not confer a "benefit" under 19 C.F.R. § 351.509(a)(1); it does not accord preferential treatment to manufacturing plants. Rather, the Class 1a asset class and corresponding depreciation rate (10%) reflect the shorter useful lives of such buildings. The Class 1a CCA was created to avoid over-collecting tax revenue, not to forgo tax revenue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to:

(a) Hold that Commerce's *Final CVD Determination* was not in accordance with law and/or unsupported by substantial record evidence with respect to the claims advanced by Plaintiff in this Complaint;

(b) Remand the *Final CVD Determination* to Commerce for determination consistent with the opinion of this Court; and

(c) Grant such additional relief as the Court may deem just and proper.


       /s/ **Nancy A. Noonan**
Nancy A. Noonan


Matthew J. Clark
Aman Kakar
Jessica R. DiPietro
Leah N. Scarpelli
Natan P.L. Tubman

ARENT FOX LLP
1717 K Street, NW
Washington, DC 20006-5344
202-857-6066

*Counsel for the Government of Québec*

Dated: September 4, 2020